[No. B111715. Second Dist., Div. Six. Feb. 18, 1998.]

JAMES I. MICHAELIS et al., Plaintiffs and Appellants, v.
ANTHONY BENAVIDES, Defendant and Respondent.

682

## COUNSEL

Gary P. Jacobs, Michaelis, Montanari & Johnson and Miriam Piwoz Goodman for Plaintiffs and Appellants.

McIvers & Associates and Kevin McIvers for Defendant and Respondent.

## OPINION

**STONE (S. J.), P. J.**—James I. and Linda Michaelis appeal the trial court's judgment following its granting of respondent Anthony Benavides's motion for nonsuit. Appellants contend that respondent, president and a majority owner of A & J Stamped Concrete, Inc. (A & J), is personally liable for the property damage they sustained as the result of his negligence in constructing a patio and driveway at their home. Respondent argues that California law does not permit a corporate officer to be personally liable for corporate decisions which result in property damage to third parties.

We determine that appellants have alleged a cause of action for negligence against respondent for personal liability. We reverse the judgment.

### FACTS

Appellants hired a general contractor to construct their residence. The general contractor subcontracted the cement work on the home's patio and driveway to A & J. Respondent was the president, director and 50 percent stockholder of A & J. He was the only person at A & J who held a state contractor's cement license. Respondent personally bid for appellants' cement job. He personally made the construction decisions for the patio and driveway. His brother Juan Benavides provided the manual labor.

The general contractor left the job during construction of the patio and driveway. Respondent personally negotiated with appellants for completion of A & J's work.

At the hearing on respondent's motion for nonsuit, respondent stipulated, without agreeing to appellants' specific factual allegations, that he was negligent in constructing their patio and driveway.

According to appellants' complaint, the patio developed severe cracks and separations caused by respondent's use of insubstantial wire screen, not steel rebar, as the reinforcement material, and his failure to install an expansion

joint between the concrete and home's foundation. Also, the patio concrete was not thick enough at the outer edges and slid down the surrounding hill.

Appellants further alleged that the driveway, which included a circular area, was four feet narrower than specified by the architect's plans, which made it difficult and dangerous for cars to turn around. The driveway drains were incorrectly placed and were too shallow and narrow in diameter. This caused rainwater to flood the front yard, to create pools around the foundation, and to form a "river" flowing down the driveway. This posed a hazard to the home's structural integrity and caused a safety hazard to persons entering or leaving appellants' property.

The trial court found that appellants had no negligence claim against respondent based on *United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586 [83 Cal.Rptr. 418, 463 P.2d 770] (*Haidinger-Hayes*). The court interpreted the case as prohibiting negligence actions by third parties against corporate officers and employees for economic losses.

## Discussion

Appellants contend the trial court erred by its reliance on *Haidinger-Hayes*. We agree.

In that case, defendant corporation was hired by plaintiff insurance company under a general agency contract to underwrite insurance policies and determine premium rates. The defendant corporation negligently computed a premium rate for an insured which resulted in pecuniary losses to plaintiff. The California Supreme Court held defendant corporation's president Haidinger was not personally liable to plaintiff for his corporation's negligence. (*Haidinger-Hayes, supra*, 1 Cal.3d at pp. 591-592.)

The court in *Haidinger-Hayes* stated: "As president and principal officer of defendant corporation, [Haidinger] was a fiduciary to and an agent of that corporation. He had a duty to the corporation to exercise his corporate powers in good faith and with a view to its interests (Corp. Code, § 820). Directors and officers are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually. . . . [¶] Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done. They may be liable, under the rules of tort and agency, for tortious acts committed on behalf of the corporation. [Citations.] They are not responsible to third persons for negligence amounting merely to nonfeasance, to a breach of duty owing to the corporation alone; the act must also

constitute a breach of duty owed to the third person. (19 Am.Jur.2d, 1382.) . . . More must be shown than breach of the officer's duty *to his corporation* to impose personal liability *to a third person* upon him." (1 Cal.3d at pp. 594-595.)

The Supreme Court in *Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447] (*Frances T.*) reviewed a corporate officer's duty of care. In that case, plaintiff condominium owner was raped and robbed in her condominium after the owners association had refused to allow her to utilize exterior lighting at her unit to protect herself against crimes occurring in the area of her condominium. Plaintiff sued the individual directors on the association's board, claiming they breached a duty of care owed to her by ordering her to remove the external lighting she had installed.

*Frances T.* interpreted *Haidinger-Hayes* as prohibiting a corporate officer's *vicarious* liability, based on his official status in the corporation, for torts committed by his corporation in which he does not personally participate or direct. *Frances T.* further interpreted *Haidinger-Hayes* to *allow* an officer's liability for his own tortious conduct. (42 Cal.3d at pp. 503-504.) "Unlike ordinary employees or other subordinate agents under their control, a corporate officer is under no compulsion to take action unreasonably injurious to third parties. But like any other employee, [officers] individually owe a duty of care, independent of the corporate entity's own duty, to refrain from acting in a manner that creates an unreasonable risk of personal injury to third parties. The reason for this rule is that otherwise, a[n officer] could inflict injuries upon others and then escape liability behind the shield of his or her representative character, even though the corporation might be insolvent or irresponsible." (*Id.*, at p. 505.)

Respondent here argues that the facts of *Haidinger-Hayes* are "on all fours" with the facts of this case. Not so. Appellants' complaint alleges facts indicating respondent may be personally liable.

The defendant officer in *Haidinger-Hayes* breached a duty of care owed to his corporation and not to a third party. "It is not denied that the acts of this defendant were done in the course and scope of his employment, for and on behalf of the corporation, and not as a contracting party. [¶] Directors or officers of a corporation . . . are not responsible to third persons for negligence amounting . . . to a breach of duty owing to the corporation alone; the act must also constitute a breach of duty owed to the third person. (19 Am.Jur.2d, 1382.)" (*Haidinger-Hayes, supra,* 1 Cal.3d at p. 595.)

That situation contrasts with the parties' stipulation here for purposes of respondent's nonsuit motion. They agreed therein that respondent was individually negligent in building appellants a patio and driveway. This acknowledges that a breach of duty owed to appellants as third parties was violated, rather than merely a breach of duty respondent owed to A & J. (*Frances T.*, *supra*, 42 Cal.3d at pp. 505, 507.)

In addition, appellants alleged facts indicating respondent may be personally liable for the negligent act by his direct participation and decisionmaking in the construction of the patio and driveway. These allegations, together with the parties' stipulation, prevent respondent from using the corporate veil to shield himself from personal liability.

In contrast, there was no evidence in *Haidinger-Hayes* that the corporate president actively participated in the tortious corporate conduct. (1 Cal.3d at p. 594.) ▮ "Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done. They may be liable, under the rules of tort and agency, for tortious acts committed on behalf of the corporation (3 Witkin, Summary of Cal. Law (7th ed. 1960) § 48(c), pp. 2342-2343; 13 Cal.Jur.2d, § 353; 19 C.J.S., § 845; Knepper, Liabilities of Corporate Officers and Directors (1969))." (*Id.*, at p. 595.)

▮ Appellants' allegations here show that respondent did not merely make a corporate policy decision which was carried out by someone else. He personally participated in and directed the construction of appellants' patio and driveway. He personally bid for appellants' job and he personally negotiated with appellants for completion of the job. He personally made the decisions to use cheaper materials and construction methods which allegedly resulted in the patio's and driveway's structural inadequacies. (*Frances T.*, *supra*, 42 Cal.3d at p. 504; 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 149, p. 144, citing Civ. Code, § 2343, subd. (3).)

Additionally, in contrast to the alleged facts here, the plaintiff in *Haidinger-Hayes* did not experience any personal injury or injury to property, but only pecuniary harm in the form of a monetary loss under an insurance policy. "Liability imposed upon agents for active participation in tortious acts of the principal have been mostly restricted to cases involving physical injury, not pecuniary harm, to third persons (see Rest.2d Agency, §§ 352, 354, Appendix, Reporter's Notes, § 354, p. 600)." (1 Cal.3d at p. 595.) Respondent's negligence here allegedly caused serious physical damage to

appellants' home. (*Frances T.*, *supra,* 42 Cal.3d at p. 505; Rest.2d Agency, § 352, com. a, p. 123; *id.*, § 353, p. 124.)

According to appellants' allegations, the distinguishing features in *Haidinger-Hayes* which absolved the defendant corporate officer of personal liability—the breach of duty to the corporation alone, the nontortious personal conduct, and the absence of physical damage—do not exist here. The instant circumstances involve a corporate officer's *personal* tortious conduct, which conduct breached a duty of care to a *third party* and caused the third party to suffer *physical damage* to his property. This presents a factual situation wholly unlike that found in *Haidinger-Hayes*.

Respondent argues this case is not properly characterized as a negligence action since the alleged damages were "economic," i.e., cost of repair damages, and hence were purely contractual in nature. Although conceding appellants may have suffered physical damage to their property, respondent complains they did not suffer any personal injury damages.

As appellants state, this distinction between damage to property and personal injury damage is artificial. It is not unlikely that personal injury could have resulted from the unsafe conditions caused by the structurally defective patio and driveway. Physical harm may be a consequence in either a personal injury or a property damage case. As legally defined, "economic" damages include both damages to a person and to his property. "[T]he term . . . means objectively verifiable monetary losses including medical expenses, loss of earnings, burial costs, loss of use of property, costs of repair or replacement, costs of obtaining substitute domestic services, loss of employment and loss of business or employment opportunities." (Civ. Code, § 1431.2, subd. (b)(1).)

Respondent also asserts he and appellants had merely a contractual relationship giving no rise to any duty by respondent personally. Not true. ▪ A contractual obligation may create a legal duty the breach of which will support a tort action. (*North American Chemical Co.* v. *Superior Court* (1997) 59 Cal.App.4th 764, 773-776 [69 Cal.Rptr.2d 466].) "Contract law exists to enforce the intentions of the parties to an agreement while tort law is designed to vindicate social policy. (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 683 [254 Cal.Rptr. 211, 765 P.2d 373].) . . . [T]he same wrongful act may constitute both a breach of contract and an invasion of an interest protected by the law of torts. (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 139, pp. 203-204.) [¶] . . . A contract to perform services gives rise to a duty of care which requires that such services be performed in a competent and reasonable manner. A negligent failure to do so may be

both a breach of contract and a tort. (*Perry* v. *Robertson* (1988) 201 Cal.App.3d 333, 340 [247 Cal.Rptr. 74].) . . . [¶] . . . In general, it has been held that an action based on the negligent performance of contractual duties, although involving elements of both contract and tort, is regarded as a delictual action, since negligence is considered the gravamen of the action. (*Eads* v. *Marks* [(1952)] 39 Cal.2d [807,] 811-812 [249 P.2d 257]; see also *Distefano* v. *Hall* (1963) 218 Cal.App.2d 657, 678 [32 Cal.Rptr. 770].)" (*Id.,* at pp. 774-775.)

We reject respondent's argument that by not interpreting *Haidinger-Hayes* to preclude his liability in particular we will in general "play havoc" with corporations law and subject individual subcontractors to unwarranted litigation. The legal fiction of the corporation as an independent entity is partly intended to insulate corporate officers from personal liability for corporate contracts. (*Frances T.,* *supra,* 42 Cal.3d at pp. 507-508.) The corporate fiction was never intended to insulate officers from liability for their own tortious conduct. (*Id.,* at p. 508.) This is sound and settled public policy.

The judgment is reversed. Costs are awarded to appellants.

Gilbert, J., and Coffee, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 29, 1998.